MICHAEL GERITY, BAR NO. 015750
ISRAEL & GERITY, PLLC
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
TELEPHONE: (602) 274-4400
FACSIMILE: (602) 274-4401
MGERITY@IG-LAW.COM

ATTORNEYS FOR PLAINTIFF VOLTAGE PICTURES, LLC

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Voltage Pictures, LLC, a California
Limited Liability Company

        Plaintiff,

v.

John and Jane Does 125-170, and
Black and White Companies 125-170,

        Defendants.

No.

**COMPLAINT FOR COPYRIGHT
INFRINGEMENT**

**AND**

**DEMAND FOR JURY TRIAL**

Plaintiff, Voltage Pictures, LLC ("Plaintiff"), through its counsel undersigned, for its complaint and causes of action against Defendants, alleges as follows:

## NATURE OF THE CASE

1.     Plaintiff files this action for copyright infringement under the United States Copyright Act and related claims for civil conspiracy and contributory infringement to combat the willful and intentional infringement of its creative works. Defendants, whose names Plaintiff expects to ascertain during discovery, illegally reproduced and distributed Plaintiff's copyrighted materials by acting in concert via the "BitTorrent" file sharing protocol, and knowingly contributed to the infringing acts of their fellow Defendants and numerous third parties and, upon information and belief, continue to do the same. Plaintiff seeks a permanent injunction, statutory or actual damages, an award of costs and attorneys' fees, and other relief.

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

## **PARTIES**

2.    Plaintiff Voltage Pictures, LLC is a(n) California Limited Liability Company.  Plaintiff is engaged in the production and distribution of motion pictures, television shows and other audiovisual works for theatrical exhibition, home entertainment, and other forms of distribution.  Plaintiff is the holder of the copyrights and/or the pertinent exclusive rights under copyright in the United States to the copyrighted creative work at issue in this Complaint.

3.    Plaintiff Voltage Pictures, LLC is a developer, producer, and distributor of motion pictures, television shows and other audiovisual works.  Plaintiff invests significant capital in producing the content associated with its brand and has produced substantial numbers of audiovisual works.   Plaintiff brings this action to stop Defendants from copying and distributing to others over the internet unauthorized copies of Plaintiff's copyrighted audiovisual works.  Defendants' infringements allow them and others unlawfully to obtain and distribute for free unauthorized copyrighted works that Plaintiff spends millions of dollars to create and/or distribute.  Each time a Defendant unlawfully distributes a free copy of Plaintiff's copyrighted audiovisual works to others over the internet, each person who copies that audiovisual work can then distribute that unlawful copy to others without any significant degradation in sound and picture quality.  Thus, a Defendant's distribution of even one unlawful copy of an audiovisual work can result in the nearly instantaneous worldwide distribution of that single copy to a limitless number of people.  Plaintiff now seeks redress for this rampant infringement of its exclusive rights.

4.    The copyrighted work at issue here is one of these audiovisual works, Maximum Conviction (the "Video").

5.    Despite Plaintiff's use of the best available investigative techniques, it is impossible for Plaintiff to identify Defendants by name at this time.  Thus, the true names and capacities, whether individual, corporate, associate or otherwise, of John

and Jane Doe Defendants 125-170 and Black and White Companies 125-170 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.

6.     Instead, each Defendant is known to Plaintiff only by an Internet Protocol address ("IP address"), which is a number assigned to Defendants' devices, such as computers, by his or her Internet Service Provider ("ISP").  In the course of monitoring internet-based infringement of its copyrighted content, Plaintiff's agents observed unlawful reproduction and distribution occurring among the IP addresses listed on Exhibit A, attached hereto, via the BitTorrent protocol (described more fully below).  Due to the dynamic nature of IP address assignments, a single Defendant may be associated with multiple IP addresses listed on Exhibit A.  Plaintiff cannot ascertain the Defendants' actual identities without information from Defendants' ISPs, and believes that information obtained in discovery will lead to the identification of each Defendant's true name and permit Plaintiff to amend this Complaint to state the same. Plaintiff further believes that additional information obtained will lead to the identification of additional infringing parties, as monitoring of online infringement of Plaintiff's motion picture is ongoing.

## JURISDICTION AND VENUE

7.     This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 US.C. § 101 *et seq.*).

8.     This Court has subject matter jurisdiction over Plaintiff's copyright infringement claim under 17 U.S.C. §§ 101, *et seq.* (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights).  This Court has supplemental jurisdiction over all other claims under 28 U.S.C. § 1367(a).

9.     This Court has personal jurisdiction because, upon information and belief, all Defendants either reside in or committed copyright infringement in this District.  Plaintiff used geolocation technology to trace the IP addresses of each

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

Defendant to a point of origin within this District.  Geolocation is a method for ascertaining the likely geographic region associated with a given IP address at a given date and time.  Through the use of geolocation, Plaintiff can establish good cause for asserting that personal jurisdiction is proper over the Defendants.  *See* Exhibit A, listing the believed city and state of residence of each Defendant.  *See also* Exhibit B, describing the use of geolocation to determine the likely location of each Defendant.

10.    In addition, and as described more fully below, upon information and belief, personal jurisdiction in this District is proper because each Defendant unlawfully distributed and offered to distribute over the internet copyrighted works for which Plaintiff has exclusive rights in such a manner that the unlawful distribution occurred in every jurisdiction in the United States, including this one.  Defendants, therefore, should anticipate being haled into court in this State and in this District.

11.    In the alternative, this Court has personal jurisdiction over non-resident Defendants, if any, under the Arizona long-arm statute because they downloaded copyrighted content from or uploaded it to residents of this District.

12.    Venue in this District is proper under 28 US.C. § 1391(b) and/or 28 US.C. §1400(a).  Although the true identity of each Defendant is unknown to Plaintiff at this time, on information and belief, each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District.

## JOINDER

13.    Joinder of Defendants is proper because they acted in a collective and interdependent manner via the internet in the unlawful reproduction and distribution of Plaintiffs copyrighted audiovisual works by means of an interactive "peer-to-peer" ("P2P") file transfer technology protocol called BitTorrent.  The BitTorrent protocol provides significant benefits to its participants, deriving from its distributed and collaborative nature, but this very nature also makes its users susceptible to joinder

under a number of legal theories.  In order to understand the basis for joinder, some description of the BitTorrent protocol is necessary at this point.  The protocol is more fully described further below in the Complaint under the heading "Infringement and BitTorrent."

14.     P2P networks, at least in their most common form, are computer systems that enable internet users to: a) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; b) search for files stored on other users' computers; and c) transfer exact copies of files from one computer to another via the internet.

15.     The particular P2P protocol at issue in this suit is called a "BitTorrent protocol" or "torrent."  The BitTorrent protocol is different than the standard P2P protocol used for file sharing networks such as Kazaa and Limewire, and it makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network.  The process begins when the initial file-provider intentionally elects to share a file with a torrent network.  This initial file is called a "seed."  The seed is broken up into numerous tiny pieces, and those pieces are then uploaded, copied and distributed among the various users ("peers") to the torrent.  When an infringer seeks to download a particular work, he first downloads a torrent file into a computer program designed to read such files, and the torrent file acts as a roadmap as to where each piece of the torrent can be found for downloading from each of the peers involved in that particular torrent.  As the torrent is copied to the peer's computer piece by piece, the downloaded pieces become immediately available to all of the other peers in the network for similar downloading.  As additional peers request the same file and begin to download its pieces, they each become a part of the network from which the pieces of the file can be downloaded.  This piecemeal system with multiple pieces of data coming from peer members is usually referred to as a "swarm."  The effect of this technology makes every participant in the BitTorrent

swarm both an uploader (distributor) and a downloader (copier) of the illegally transferred file. This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network—or even a portion of a copy—can also be a source of download for that infringing file, potentially both copying and distributing the infringing work. *See* Exhibit B, Declaration of Darren M. Griffin describing the BitTorrent protocol.

16. This distributed nature of BitTorrent leads to a rapid viral spreading of a file throughout peer users, and does so without degradation in sound or picture quality. Once all the pieces are located and downloaded, they are reconstructed back into the original order, giving that peer a complete copy of the entire original file. That peer then makes pieces of that file, associated with that same unique hash tag, available for download by other peers using the same process. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a BitTorrent protocol, any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file. Essentially, every infringer is stealing copyrighted material from other infringers through many ISPs in numerous jurisdictions around the country.

17. It is important to understand that Plaintiffs are able to establish a connection between all of the Defendants in this matter because they can demonstrate that the Defendants each participated in the same swarm and shared the same copy of the Video. Plaintiff can do this using the "hash" value of the torrent file at issue. Each torrent file contains a "hash" value, which is a 40-character string of letters and numbers (hexadecimal) that uniquely identifies the specific original work to which the torrent file is associated. It is the hash value that allows the torrent client to find and download each of the specific pieces that make up a specific seed. The hash value can be analogized to a fingerprint, with each seed having its own, unique hash value.

While a single work, such as a video or motion picture, might be uploaded for sharing by many different initial file-providers, each particular instance of sharing gets its own unique hash tag, and so all of the peers downloading a work associated with a single hash tag are actually downloading a single, particular work from a single original source.   In other words, any particular work may be shared via multiple, separate seeds, but all sharing tied to a particular hash tag involves one particular seed created from a single original source, shared as part of a single swarm.

18.   All of the Defendants included in this matter participated in a single swarm in which each of them possessed and shared the exact same infringing work (the same seed) with the exact same exact hash value. *See* Exhibit A.  The fact that all of the Defendants in this case were sharing the same work with the same specific hash tag incontrovertibly links all of them together in collaborating to share the exact same copy of Plaintiff's Video.  While many people may have illegally downloaded Plaintiff's Video at various times from various sources, <u>all of the Defendants in this matter participated together in sharing a specific copy of Plaintiff's Video originating from the same original seed</u>.   Therefore, each of the Doe Defendants to this matter acted and continues to act in concert as part of a networked system designed to infringe Plaintiff's copyright—a collective enterprise constituting "shared, overlapping facts."

19.   Each Defendant participated in the same transaction, occurrence, or series of transactions or occurrences as at least the other defendants to illegally reproduce and distribute the Video amongst each other.  Specifically, the Defendants intentionally entered and participated in a single BitTorrent swarm that was formed for the purpose of exchanging pieces of a file that was unique to the swarm.  The file, in this case, was a specific digital reproduction of the Video.  The series of transactions in this case involved exchanging pieces of the Video file with other Defendants in the group of individuals who were sharing pieces of the file among one another (i.e., the swarm) to obtain a complete copy of the Video.  While Plaintiff's agents may observed

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

other swarms involved in reproducing and distributing the Video, each of the Defendants in this action joined together in just one, single swarm.

20.     Joinder is also proper because Defendants participated in a civil conspiracy to illegally reproduce and distribute the video.   The Defendants intentionally entered a swarm for the purpose of collaborating with the other Defendants and numerous third parties to conduct illegal distribution and reproduction of the particular Video file.  Because a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, the group of uploaders collaborates to speed the completion of each download of the file.  The Defendants were collectively engaged in the conspiracy even if they were not engaged in the swarm contemporaneously because they all took concerted action that contributed to the chain of data distribution.  Plaintiff has asserted a right to relief jointly and severally against the Doe Defendants.

21.     Joinder is also proper because, upon information and belief, many of the Defendants also acted in concert with other swarm members and Defendants by participating in "Peer Exchange." Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently.   Peer Exchange is responsible for helping swarm members find more users that share the same data.  Thus, each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries.

22.     Joinder is also proper because, upon information and belief, many Defendants also acted in concert with other John Doe swarm members and Defendants by linking together globally through use of a Distributed Hash Table.  A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's hash value to locate sources for the requested data.  Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central

computer, called a tracker. By allowing members of the swarm to rely on individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this data is also helping to hold this worldwide network together.

23. Joinder is also proper at this early stage of the litigation because, upon information and belief, a single individual can be associated with multiple IP addresses. Due to the dynamic nature of consumer IP address assignments, an individual's IP address can change frequently. Thus, Plaintiff's monitoring software, which identifies infringing activity by IP address, may identify multiple instances of infringing activity that are actually associated with a single individual. In other words, it is highly possible that multiple Does (i.e., IP addresses listed on Exhibit A) are, in fact, a single individual. Anecdotally, in the past, single individuals have been associated with nearly one-third of the IP addresses contained in an initial complaint. Joinder of identical claims against a single individual is encouraged under the Federal Rules and conserves the resources of this Court.

24. Further, Defendants share the same questions of law with respect to copyright infringement, including but not limited to:

    a.     whether "copying" has occurred within the meaning of the Copyright Act;

    b.     whether entering a torrent swarm constitutes a willful act of infringement;

    c.     whether entering a torrent swarm constitutes a civil conspiracy; and

    d.     whether and to what extent Plaintiff has been damaged by the Defendant's conduct.

For this reason, principles of judicial economy favor joinder of these Defendants.

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX ARIZONA 85012
(602) 274-4400 / FAX (602) 274-4401

## ALLEGATIONS COMMON TO ALL COUNTS

### The Copyright

25.    Plaintiff is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to the Video.

26.    The Video contains wholly original material that is copyrightable subject matter under the laws of the United States.

27.    Plaintiff has applied for and received a certificate of copyright registration from the United States Copyright Office (Reg. No. Pau 3-647-070). A copy of that Certificate of Registration is attached hereto as Exhibit C.

28.    Under the Copyright Act, Plaintiff is the proprietor of all right, title, and interest in the Video, including the right to sue for past infringement.

29.    Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce the copyrighted work and to distribute the copyrighted work to the public.

30.    The torrent file used to access the copyrighted material was named in a manner that would have provided an ordinary individual notice that the Video was protected by the copyright laws.

31.    Plaintiff's Video is easily discernible as a professional work. Plaintiff created the Video using professional performers, directors, cinematographers, lighting technicians, set designers and editors. Plaintiff created the Video with professional-grade cameras, lighting, and editing equipment.

32.    The Video contains a copyright notice advising the viewer that the motion picture is protected by the copyright laws. Similarly, the promotional materials, packaging and other generally available public information contain such copyright notices.

33.    Users of the BitTorrent protocol initiate their infringing conduct by first intentionally logging into the one of many BitTorrent client repositories that are well-known among users for their large index of copyrighted movies, television shows,

software and adult videos. The user then intentionally obtains a torrent file from the index and intentionally loads it into a computer program designed to read such files and use them to download the copyrighted material. The user does not pay for the copyrighted material or take any other steps to obtain a valid copy or license.

34.    In light of the above, Defendants had notice of Plaintiff's copyright rights.

### Infringement and BitTorrent

35.    Defendants, without Plaintiff's authorization or license, intentionally downloaded a torrent file particular to Plaintiff's Video, purposefully loaded that torrent file into their BitTorrent clients, entered a BitTorrent swarm particular to Plaintiff's Video, and reproduced and distributed the Video, including the Video's protected elements, to numerous third parties.

36.    As stated above, BitTorrent is a peer-to-peer file sharing protocol used for copying and distributing data on the internet, including files containing digital versions of motion pictures. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or group of users, to download and upload from each other. The process works as follows:

37.    Users intentionally download a small program that they install on their computers—the BitTorrent "client" application. The BitTorrent client is the user's interface during the downloading/uploading process. There are many different BitTorrent clients, all of which are readily available on the internet for free.

38.    BitTorrent client applications typically lack the ability to search for torrent files. To find torrent files available for download (as made available by other BitTorrent users), users intentionally visit torrent sites using any standard web browser.

39.    A torrent site is a website that contains an index of torrent files being made available by other users (generally an extensive listing of movies and television

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

programs, among other copyrighted content). The torrent site hosts and distributes small torrent files known as "torrent files." Although torrent files do not contain actual audio/visual media, they instruct the client application on a user's computer where to go and how to get the desired file. Torrent files interact with specific trackers, allowing the user to download the desired file.

40. The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. The torrent file is tagged with the file's unique hash value, which acts as a roadmap to the IP addresses of other users who are sharing the media file identified by the unique hash value, as well as specifics about the media file.

41. A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users. When a BitTorrent user seeks to download a movie or television file, he or she merely clicks on the appropriate torrent file on a torrent site, and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

42. Files downloaded in this method are downloaded in hundreds of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

43. Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

offering the desired motion picture file for download. The downloading user's BitTorrent software then begins downloading the motion picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

44.     The life cycle of a file shared using BitTorrent begins with just one individual—the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to share a torrent file with a torrent swarm. The file shared in this case is Plaintiff's Video, which was shared with the hash value [HASH].

45.     Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of Plaintiff's copyrighted Video on the downloaders' computers. For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one other infringer, so that together the pieces downloaded by members of the swarm comprise the whole Video when reassembled, the initial propagator may leave the swarm, and the remaining infringers can still obtain a full copy of the Video by exchanging the pieces of the Motion Picture that each one has.

46.     Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. Thus, the effect of this technology effectively makes every downloader of the content also an uploader. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material, so long as that first peer is online at the time the subsequent peer requests the file from the swarm.

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX ARIZONA 85012
(602) 274-4400 / FAX (602) 274-4401

47.     This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm, the frequency of successful downloads also increases.   Because of the nature of the collective swarm, every infringer is—and by necessity all infringers together are—both stealing the Plaintiff's copyrighted material and redistributing it to others.

48.     Plaintiff employs proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring of the BitTorrent-based swarm involved in distributing the Video. This software is effective in capturing data about the activity of peers in a swarm and their infringing conduct

49.     Plaintiff observed Defendants' activities in the torrent swarm specific to the Video and created a log of IP address identifying each Defendant and the date and time of Defendant's activity, attached hereto as Exhibit A.

**COUNT I**
**INFRINGEMENT OF COPYRIGHTS**

50.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51.     Defendants' conduct infringes upon Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

52.     The Video contains a copyright notice advising the viewer that the motion picture is protected by the copyright laws.

53.     Each Defendant knew or had constructive knowledge that their acts constituted copyright infringement.

54.     Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Plaintiff's rights.

55.     Plaintiff has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. Plaintiff continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the

possible damages stemming from the Defendants' conduct.

56.     Plaintiff hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

57.     As Defendants' infringement was intentional and willful, the Plaintiff is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

58.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all copies of Copyrighted Motion Picture made in violation of Plaintiff's copyrights.

## COUNT II
## CONTRIBUTORY INFRINGEMENT

59.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60.     Defendants had knowledge that they were illegally downloading and distributing Plaintiff's Video without permission or consent.

61.     Defendants, with knowledge of their illegal activities, materially contributed to each other's infringing conduct.

62.     Defendants, each and individually, had both actual and constructive knowledge that they were engaged in an act consisting of direct infringement of Plaintiff's copyright.

63.     Defendants downloaded a torrent file, opened it using a BitTorrent client, entered a torrent swarm particular to the Video and knowingly and intentionally

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

engaged in contributing to the each other's infringing conduct by distributing pieces of the file amongst one another that could be used by the recipient to further distribute in exchange for additional pieces of the file from third parties.

64. As a result of the contributory infringement of the Video by Defendants, Plaintiff has been damaged, as is more fully alleged in Count I, above.

## COUNT III
## CIVIL CONSPIRACY

65. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66. In using the peer-to-peer BitTorrent file distribution method, each Defendant engaged in a concerted action with other Defendants and yet unnamed individuals to reproduce and distribute Plaintiff's Video by exchanging pieces of the Video file in the torrent swarm.

67. Each of the Defendants downloaded a torrent file, opened it using a BitTorrent client, and then entered a torrent swarm comprised of other individuals distributing and reproducing Plaintiff's Video. By so doing, the Defendants constructively agreed to engage in the unlawful reproduction and distribution of Plaintiff's copyrighted work.

68. Participants in the torrent swarm have conspired to provide other individuals with pieces of the Video in exchange for receiving other pieces of the same Video to eventually obtain a complete copy of the file.

69. In furtherance of this civil conspiracy, Defendants committed overt tortious and unlawful acts by using BitTorrent software to download the Video from and distribute it to others, and were willful participants in this joint activity.

70. As a proximate result of this conspiracy, Plaintiff has been damaged, as is more fully alleged in Count I, above.

## COUNT IV
## NEGLIGENCE

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

71.    Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.    Upon information and belief, Defendants accessed, or controlled access, to the internet connection used in performing the unauthorized copying and sharing of Plaintiff's Video described above.

73.    Upon information and belief, Defendants failed to adequately secure access to their internet connection to prevent use of that connection for the unlawful purposes set forth herein.

74.    Reasonable users of the internet take steps to secure access to their internet connection to prevent use of the connection for improper and/or illegal purposes, and are aware of the risks inherent in failing to secure such access. Therefore, Defendants' failure to secure their internet connections, and the resulting infringing use of those connections, constitutes a breach of the ordinary care that reasonable persons exercise in accessing or controlling access to an internet connection.

75.    Upon information and belief, Plaintiff alleges that Defendants' failure to secure access to their internet connection allowed for the copying and sharing of Plaintiff's Video by use of the BitTorrent protocol on Defendants' respective internet connections, and interfering with Plaintiff's exclusive rights in the copyrighted work.

76.    Upon information and belief, by virtue of this unsecured access, Defendants negligently allowed the use of their internet connections to perform the above-described copying and sharing of Plaintiff's copyrighted Video.

77.    Upon information and belief, had Defendants taken reasonable care in securing access to their internet connections, such infringements as those described above would not have occurred.

78.    Upon information and belief, Defendants' negligent actions allowed others to unlawfully copy and share Plaintiff's copyrighted Video, proximately causing

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

financial harm to Plaintiff and unlawfully interfering with Plaintiff's exclusive rights in the Video.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

A.  For entry of permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in the Video and any motion picture or audiovisual work, whether now in existence or later created, that is owned or controlled by Plaintiff ("Plaintiff's Works), including without limitation by using the internet to reproduce or copy Plaintiff's Works, to distribute Plaintiff's Works, or to make Plaintiff's Works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Each Defendant also shall destroy all copies of the Video and/or Plaintiff's Works that Defendant has downloaded onto any computer hard drive, server, or other storage medium without Plaintiff's authorization, and shall destroy all copies of those downloaded audiovisual works transferred onto any physical medium or device in each Defendant's possession, custody, or control;

B.  For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff;

C.  For an order of impoundment under 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials that are in Defendants' possession or under their control;

D.  On Count II, an order that each Doe Defendant is jointly and severally liable to Plaintiff in the full amount of Judgment on the basis of a claim for contributory infringement of copyright; for an award of

compensatory damages in favor of Plaintiff and against the Doe Defendants, jointly and severally, in an amount to be determined at trial;

E.    On Count III, an order that Defendants are jointly and severally liable to the Plaintiff in the full amount of the Judgment on the basis of a common law claim for civil conspiracy to commit copyright infringement; for an award of compensatory damages in favor of the Plaintiff and against Defendants, jointly and severally, in an amount to be determined at trial;

F.    For Plaintiff's costs;

G.    For Plaintiff s reasonable attorneys' fees; and

H.    For such other and further relief as the Court deems proper.

RESPECTFULLY SUBMITTED this 10th day of April 2013.

ISRAEL & GERITY, PLLC

By: /s/Michael Gerity
Israel & Gerity, PLLC
3300 North Central Avenue, Suite 2000
Phoenix, Arizona 85012

Attorneys for Plaintiff Voltage Pictures, LLC

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

# EXHIBIT A
# LIST OF IP ADDRESSES

# Exhibit A

**Title:** Maximum Conviction
**Rights Owner:** Voltage
**File Name:** Maximum Conviction (2012)

| No | IP Address | P2PClient | HitDateUTC (MM/DD/Y) | Filehash | ISP | Region | City |
|----|-----------|-----------|----------------------|----------|-----|--------|------|
| 1 | 171.36.161.242 | BitComet 1.34 | 03/10/2013 07:48:39 PM | 638080D0C71661D686B354B52663942BD69CD056 | Century Link | Arizona | Phoenix |
| 2 | 263.225.213.225 | uTorrent 3.3.0 | 03/05/2013 06:38:44 AM | 638080D0C71661D686B354B52663942BD69CD056 | Century Link | Arizona | Chandler |
| 3 | 124.117.183.174 | uTorrent 3.2.3 | 03/05/2013 03:58:24 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cable One | Arizona | Prescott |
| 4 | 66.181.244.102 | uTorrent 3.2.3 | 02/27/2013 06:03:09 AM | 638080D0C71661D686B354B52663942BD69CD056 | DakotaPro.biz | Arizona | Tucson |
| 5 | 68.226.127.108 | uTorrent 3.3.0 | 02/24/2013 01:29:39 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Chandler |
| 6 | 671.223.186.17 | uTorrent 3.2.3 | 02/16/2013 08:42:32 AM | 638080D0C71661D686B354B52663942BD69CD056 | Century Link | Arizona | Mesa |
| 7 | 98.167.136.128 | BitTornado 18.33.0 | 02/14/2013 07:39:42 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Phoenix |
| 8 | 98.167.184.100 | -BA3300- | 02/14/2013 02:02:24 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Phoenix |
| 9 | 972.208.40.62 | uTorrent 3.1.3 | 02/13/2013 10:35:35 PM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Scottsdale |
| 10 | 174.235.132.59 | uTorrent 3.2.3 | 02/13/2013 04:30:08 AM | 638080D0C71661D686B354B52663942BD69CD056 | Verizon Wireless | Arizona | Mesa |
| 11 | 172.201.105.20 | BitTorrent 6.4.0 | 02/09/2013 03:47:55 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Peoria |
| 12 | 68.99.253.13 | BitTorrent 7.4.5 | 02/08/2013 02:56:13 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Tucson |
| 13 | 24.248.38.2 | uTorrent 3.2.3 | 02/07/2013 12:00:17 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Phoenix |
| 14 | 475.164.50.144 | -BA3300- | 01/28/2013 02:00:40 AM | 638080D0C71661D686B354B52663942BD69CD056 | Century Link | Arizona | Tucson |
| 15 | 72.201.32.203 | Vuze 4.5.0.4 | 01/27/2013 08:31:10 PM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Peoria |
| 16 | 68.3.41.168 | Vuze 4.5.0.4 | 01/21/2013 12:28:03 PM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Phoenix |
| 17 | 24.121.7.66 | Vuze 4.8.0.0 | 01/16/2013 03:26:48 PM | 638080D0C71661D686B354B52663942BD69CD056 | Suddenlink Communica | Arizona | Lake Havasu City |
| 18 | 172.208.164.195 | uTorrent 3.2.3 | 01/15/2013 09:23:50 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Mesa |
| 19 | 70.162.216.8 | uTorrent 3.2.3 | 01/14/2013 02:13:25 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Avondale |
| 20 | 174.17.220.165 | BitTorrent 7.6.1 | 01/12/2013 10:05:51 AM | 638080D0C71661D686B354B52663942BD69CD056 | Century Link | Arizona | Chandler |
| 21 | 70.171.239.29 | uTorrent 3.2.3 | 01/11/2013 05:03:32 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Tucson |
| 22 | 72.200.94.128 | Vuze 4.7.0.2 | 01/10/2013 06:42:07 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Chandler |
| 23 | 209.197.16.168 | Vuze 4.8.1.2 | 01/10/2013 05:03:32 AM | 638080D0C71661D686B354B52663942BD69CD056 | Highwinds Network Grc | Arizona | Phoenix |
| 24 | 70.199.214.40 | BitTorrent 7.7.2 | 01/08/2013 01:20:16 AM | 638080D0C71661D686B354B52663942BD69CD056 | Verizon Wireless | Arizona | Apache Junction |
| 25 | 97.124.42.19 | uTorrent 3.1.3 | 01/07/2013 03:22:04 AM | 638080D0C71661D686B354B52663942BD69CD056 | Century Link | Arizona | Phoenix |
| 26 | 209.197.16.136 | Vuze 4.8.1.2 | 01/07/2013 12:36:44 AM | 638080D0C71661D686B354B52663942BD69CD056 | Highwinds Network Grc | Arizona | Phoenix |
| 27 | 72.223.78.90 | uTorrent 3.2.0 | 01/05/2013 11:08:23 PM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Gilbert |
| 28 | 70.162.223.104 | uTorrent 3.1.3 | 01/05/2013 06:01:40 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Phoenix |
| 29 | 69.244.51.181 | uTorrent 3.2.3 | 12/28/2012 09:39:58 PM | 638080D0C71661D686B354B52663942BD69CD056 | Comcast Cable | Arizona | Tucson |
| 30 | 68.2.161.249 | BitTorrent 7.7.2 | 12/24/2012 05:51:35 PM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Mesa |
| 31 | 70.190.6.47 | uTorrent 3.2.3 | 12/24/2012 05:09:27 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Coronado Ntl Fore |
| 32 | 75.171.62.21 | BitTorrent 7.7.2 | 12/22/2012 04:56:42 PM | 638080D0C71661D686B354B52663942BD69CD056 | Century Link | Arizona | Mesa |
| 33 | 68.105.130.104 | uTorrent 3.2.3 | 12/22/2012 04:01:47 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Avondale |
| 34 | 72.208.81.27 | uTorrent 3.2.3 | 12/21/2012 06:05:55 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Tucson |
| 35 | 72.201.255.99 | uTorrent 3.2.3 | 12/20/2012 01:45:39 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Phoenix |
| 36 | 68.2.214.146 | uTorrent 3.1.3 | 12/20/2012 01:06:05 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Scottsdale |
| 37 | 70.162.84.130 | uTorrent 3.2.1 | 12/19/2012 11:51:04 PM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Tempe |
| 38 | 184.12.160.187 | Vuze 4.8.0.0 | 12/18/2012 03:45:47 AM | 638080D0C71661D686B354B52663942BD69CD056 | Frontier Communicatio | Arizona | Kingman |
| 39 | 98.177.199.214 | uTorrent 3.1.3 | 12/17/2012 05:44:45 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Scottsdale |
| 40 | 72.201.130.12 | BitTorrent 7.7.0 | 12/16/2012 09:23:29 AM | 638080D0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Sierra Vista |
| 41 | 70.199.199.212 | BitTorrent 7.7.0 | 12/16/2012 07:29:48 AM | 638080D0C71661D686B354B52663942BD69CD056 | Verizon Wireless | Arizona | Phoenix |
| 42 | 74.33.3.202 | Vuze 4.8.0.0 | 12/15/2012 09:23:48 PM | 638080D0C71661D686B354B52663942BD69CD056 | Frontier Communicatio | Arizona | Kingman |

# Exhibit A

| 43 | 75.171.38.202 | µTorrent 3.1.3 | 12/15/2012 03:11:29 AM | SHA1: 63808DD0C71661D686B354B52663942BD69CD056 | Century Link | Arizona | Phoenix |
| 44 | 68.96.48.97 | BitComet 1.29 | 12/14/2012 07:13:04 PM | SHA1: 63808DD0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Green Valley |
| 45 | 70.190.124.123 | µTorrent 3.1.3 | 12/13/2012 12:37:31 AM | SHA1: 63808DD0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Sierra Vista |
| 46 | 68.99.205.225 | Transmission 2.51 | 12/11/2012 01:39:58 PM | SHA1: 63808DD0C71661D686B354B52663942BD69CD056 | Cox Communications | Arizona | Tucson |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

# EXHIBIT B
# DECLARATION OF
# DARREN M. GRIFFIN

1

MICHAEL GERITY, BAR NO. 015750
ISRAEL & GERITY, PLLC
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
TELEPHONE: (602) 274-4400
FACSIMILE: (602) 274-4401
MGERITY@IG-LAW.COM

ATTORNEYS FOR PLAINTIFF VOLTAGE PICTURES, LLC

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Voltage Pictures, LLC, a California Limited Liability Company | No. |
| Plaintiff, | **DECLARATION OF DARREN M. GRIFFIN IN SUPPORT OF PLAINTIFF'S COMPLAINT** |
| v. | |
| John and Jane Does 125-170, and Black and White Companies 125-170, | |
| Defendants. | |

1.     My name is Darren M. Griffin.  I am over the age of 18 and am otherwise competent to make this declaration.  This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

2.     I have been retained as a software consultant by Crystal Bay Corporation ("CBC"), a company incorporated in South Dakota and organized and existing under the laws of the United States, in its technical department.  CBC is in the business of providing forensic investigation services to copyright owners.

3.     The Plaintiff in this matter has retained CBC for the purposes described below in this Declaration.

4.     The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.  It allows hundreds of millions of people around the world to freely and easily exchange ideas and information, including academic research, literary works, financial data, music, audiovisual works,

1   graphics, and an unending and ever-changing array of other data.

2       5.      Unfortunately, the Internet also has afforded opportunities for the wide-
3   scale infringement of copyrighted motion pictures and other audiovisual works.

4       6.      Once a motion picture or other audiovisual work has been transformed
5   into an unsecured digital format, it can be copied further and distributed an unlimited
6   number of times over the Internet, without significant degradation in picture or sound
7   quality.

8       7.      To copy and distribute copyrighted motion pictures or other audiovisual
9   works over the Internet, many individuals use online media distribution systems, or so-
10  called P2P networks.   P2P networks, at least in their most common form, are
11  computer systems that enable Internet users to (1) make files (including motion
12  pictures and other audiovisual works) stored on each user's computer available for
13  copying by other users; (2) search for files stored on other users' computers; and (3)
14  transfer exact copies of files from one computer to another via the Internet.

15      8.      At any given moment, and depending on the particular P2P network
16  involved, anywhere from thousands to millions of people, either across the country or
17  around the world, unlawfully use the P2P network to connect to one another's
18  computers to upload (distribute) or download (copy) copyrighted material.

19      9.      The P2P systems represent a "viral" distribution of digital files: each user
20  of the system who copies a digital file from another user can then distribute the file to
21  still other users and so on, so that copies of an infringing file can be distributed to
22  millions of people worldwide with breathtaking speed.

23      10.     Further, a person who uses a P2P network is free to use any alias (or
24  "network name") whatsoever, without revealing his or her true identity to other users.
25  Thus, while one can monitor and observe infringement occurring on the Internet, one
26  cannot immediately determine the true identities of those individuals who are
27  committing the infringement.

28      11.     Additionally, the particular P2P protocol at issue in this matter is called a

ISRAEL • GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

2

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

1   "BitTorrent protocol" or "torrent."  The BitTorrent protocol is different than the

2   standard P2P protocol used for file sharing networks such as Kazaa and Limewire, and

3   it makes even small computers with low bandwidth capable of participating in large

4   data transfers across a P2P network.  The process begins when the initial file-provider

5   intentionally elects to share a file with a torrent network.  This initial file is called a

6   "seed."  The seed is broken up into numerous tiny pieces, and those pieces are then

7   uploaded, copied and distributed among the various users ("peers") to the torrent.

8   When an infringer seeks to download a particular work, he first downloads a torrent

9   file into a computer program designed to read such files, and the torrent file acts as a

10  roadmap as to where each piece of the torrent can be found for downloading from

11  each of the peers involved in that particular torrent.  As the torrent is copied to the

12  peer's computer piece by piece, the downloaded pieces become immediately available

13  to all of the other peers in the network for similar downloading.  As additional peers

14  request the same file and begin to download its pieces, they each become a part of the

15  network from which the pieces of the file can be downloaded.  This piecemeal system

16  with multiple pieces of data coming from peer members is usually referred to as a

17  "swarm."  The effect of this technology makes every participant in the BitTorrent

18  swarm both an uploader (distributor) and a downloader (copier) of the illegally

19  transferred file.

20         12.    This means that every "node" or peer user who has a copy of the

21  infringing copyrighted material on a P2P network—or even a portion of a copy—can

22  also be a source of download for that infringing file, potentially both copying and

23  distributing the infringing work.  This distributed nature of P2P leads to a rapid viral

24  spreading of a file throughout peer users.  As more peers join the swarm, the

25  likelihood of a successful download increases.  Because of the nature of a P2P

26  protocol, any seed peer who has downloaded a file prior to the time a subsequent peer

27  downloads the same file is automatically a possible source for the subsequent peer so

28  long as that first seed peer is online at the time the subsequent peer downloads a file.

1    Essentially, every infringer is exchanging copyrighted material with other infringers
2    through many ISPs in numerous jurisdictions around the country.

3          13.    It is important to understand that one can establish a connection between
4    multiple peers in a single swarm because it is possible to demonstrate when peers
5    participated in the same swarm and shared the same copy of a particular digital file.
6    This can be accomplished using the "hash" value of the torrent file being examined.
7    Each torrent file contains a "hash" value, which is a 40-character string of letters and
8    numbers (hexadecimal) that uniquely identifies the specific original work to which the
9    torrent file is associated.  It is the hash value that allows the torrent client to find and
10   download each of the specific pieces that make up a specific seed.  The hash value can
11   be analogized to a fingerprint, with each seed having its own, unique hash value.
12   While a single work, such as a video or motion picture, might be uploaded for sharing
13   by many different initial file-providers, each particular instance of sharing gets its own
14   unique hash tag, and so all of the peers downloading a work associated with a single
15   hash tag are actually downloading a single, particular work from a single original
16   source.  In other words, any particular work may be shared via multiple, separate
17   seeds, but all sharing tied to a particular hash tag involves one particular seed created
18   from a single original source, shared as part of a single swarm.

19          14.    CBC has been retained by Plaintiff to assist it in investigating
20   infringement of its copyrighted audiovisual work, Maximum Conviction (the
21   "Video").  The forensic software used by CBC routinely collects, identifies and
22   records the Internet Protocol ("IP") addresses in use by those people who employ
23   the BitTorrent protocol to share, copy, reproduce and distribute copyrighted works.

24          15.    All infringers connected to a particular seed of Plaintiff's work are
25   investigated through downloading a part of the file placed on their computer.

26          16.    This evidence is then saved on CBC's servers.

27          17.    Once CBC's searching software program identifies an infringer in the
28   way described herein for the Video for which Plaintiff owns the exclusive licensing

ISRAEL ♦ GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-1401

4

and distribution rights, CBC obtains the IP address of each user offering the file for download.

18.    An IP address is a unique numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP"). It only enables CBC to trace the infringer's access to the Internet to a particular ISP. Subscribing to and setting up an account with an ISP is the most common and legitimate way for someone to gain access to the Internet. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Cox Communications, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet.

19.    In logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and Media Access Control number of the user/subscriber.

20.    Only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber. From time to time, a subscriber of internet services may be assigned different IP addresses from their ISP. Thus, to correlate a subscriber with an IP address, the ISP also needs to know when the IP address was being used. Unfortunately, many ISPs only retain for a very limited amount of time the information necessary to correlate an IP address to a particular subscriber.

21.    When available, CBC also obtains the user's pseudonym or network name and examines the user's publicly available directory on his or her computer for other files that lexically match the Video. In addition to the file of the audiovisual work itself, CBC downloads or otherwise collects publicly available information about the network user that is designed to help Plaintiff identify the infringer.

ISRAEL & GERITY, P.L.L.C.
3100 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

5

22.     The exact manner in which CBC determines a user's IP address varies by P2P network.

23.     CBC determined that the Doe Defendants addressed herein were using ISPs listed in Exhibit A to Plaintiff's Complaint, together with various other ISPs operating both within and outside the District of Arizona, to gain access to the Internet and distribute and make available for distribution and copying the Video.

24.     Once CBC identified the ISP used by the Doe Defendants to gain access to the Internet from the IP address, an e-mail was sent to the relevant contact at each ISP informing them of the Doe Defendant's IP address and the date and time of the infringing activity.

25.     It is possible for digital files to be mislabeled or corrupted; therefore, CBC (and accordingly, Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which audiovisual work is copied in the downloaded file, but also confirms this fact by conducting a visual comparison between the downloaded file and the Video itself.

26.     As to Plaintiff's Video, as identified in the Complaint, a member of CBC watched a DVD copy of the audiovisual work provided by Plaintiff.

27.     After CBC identified the Doe Defendants and downloaded the audiovisual works they were distributing, CBC opened the downloaded files, watched them and confirmed that they contain a substantial portion of the Video identified in the Complaint.

28.     Plaintiff retained CBC to identify the IP addresses of those BitTorrent users who were copying and distributing Plaintiff's copyrighted audiovisual work as identified in Exhibit C to Plaintiff's Complaint, referred to as the Video herein. CBC tasked me with analyzing, reviewing and attesting to the results of the investigation.

29.     During the performance of my duties as detailed below, I used forensic software provided by CBC to scan peer-to-peer networks for the presence of infringing transactions.

ISRAEL & GERITY, P.L.L.C.
5500 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

6

30.    After reviewing the evidence logs, I isolated the transactions and the IP addresses of the users responsible for copying and distributing the Work.

31.    Through each of the transactions, the computers using the IP addresses identified in Exhibit A transmitted a copy or a part of a copy of a digital media file identified by the hash value set forth in Exhibit A. The IP addresses, hash values, dates and times contained in Exhibit A correctly reflect what is contained in the evidence logs. The subscribers using the IP addresses set forth in Exhibit A were all part of a "swarm" of users that were reproducing, distributing, displaying or performing the Video.

32.    Moreover, the users were sharing the exact same copy of the Video. Any digital copy of an audiovisual work may be uniquely identified by a unique, coded, string of characters called a "hash checksum." The hash checksum is a string of alphanumeric characters generated by a mathematical algorithm known as US Secure Hash Algorithm 1 or "SHA-1", which was developed by the National Security Agency and published as a US government standard. Using a hash tag to identify different copies of the Video, I confirmed that these users reproduced the very same copy of the Video.

33.    The CBC software analyzed each BitTorrent "piece" distributed by each IP address listed in Exhibit A and verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital audiovisual work.

34.    The software uses a geolocation functionality to confirm that all IP addresses of the users set forth in Exhibit A were located in Arizona. Though an IP address alone does not reveal the name or contact information of the account holder, it does reveal the locations of the Internet line used for the transaction. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. These registries assign blocks of IP addresses to ISPs by geographic region. In the United States, these blocks are assigned and tracked by the American Registry of Internet Numbers. Master tables correlating the IP addresses with local

7

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX (602) 274-4401

regions are maintained by these organizations in a publicly-available and searchable format. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial database by ISPs.

35. I have confirmed not only that the users distributed the files in Arizona, but also the specific location where the distribution took place, as set forth in Exhibit A.

**FURTHER DECLARANT SAYETH NAUGHT.**

**<u>DECLARATION</u>**

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28 day of March 2013.

By: _____
Darren M. Griffin

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

# EXHIBIT C
# COPYRIGHT
# REGISTRATION/APP

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PAu 3-647-070

**Effective date of
registration:**

July 12, 2012

---

## Title

**Title of Work:** MAXIMUM CONVICTION

## Completion/Publication

**Year of Completion:** 2012

## Author

- **Author:** Maxcon Productions Inc

  **Author Created:** entire motion picture

  **Work made for hire:** Yes

  **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Maxcon Productions Inc

100 Universal City Plz 5183, Universal City, CA, 91608, United States

**Transfer Statement:** By written agreement

## Rights and Permissions

**Name:** Bryan Sexton

**Email:** bs@hmbmail.com    **Telephone:** 818-733-3700

**Address:** 100 Universal City Plz 5183

Universal City, CA 91608  United States

## Certification

**Name:** Peter Richards

**Date:** July 11, 2012

**Applicant's Tracking Number:** 8728-4736-3975

**Registration #:**   PAU003647070
**Service Request #:**   1-793406561



Maxcon Productions Inc
Bryan Sexton
100 Universal City Plz 5183
Universal City, CA 91608

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 10th day of April 2013.

ISRAEL & GERITY, PLLC


By: /s/Michael Gerity
Michael Gerity
Israel & Gerity, PLLC
3300 North Central Avenue, Suite 2000
Phoenix, Arizona 85012

Attorneys for Plaintiff Voltage Pictures, LLC

ISRAEL & GERITY, P.L.L.C.
3300 NORTH CENTRAL AVENUE, SUITE 2000
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April 2013, I electronically transmitted Plaintiff's Complaint and Jury Demand using the CM/ECF system for filing. There are no CM/ECF registrants at this time.

DATED this 10th day of April 2013.

ISRAEL & GERITY, PLLC

By: /s/Michael Gerity
Michael Gerity
3300 North Central Avenue
Suite 2000
Phoenix, Arizona 85012